# In the United States Court of Federal Claims

No. 21-1634C
Filed: December 22, 2021
NOT FOR PUBLICATION

---

**GREGORY JOSEPH PODLUCKY,**

     *Plaintiff*,

v.

**UNITED STATES,**

     *Defendant*.

---

### MEMORANDUM OPINION AND ORDER

*HERTLING*, **Judge**

     Gregory Joseph Podlucky filed this suit seeking damages of $22,517,500,000. Although the complaint is not entirely clear, the plaintiff's claim appears to be predicated on a Default Judgment and Notice of Claim for Right of Subrogation that he filed on the docket of a criminal case in which he had been convicted. He also alleges that he filed a claim against the Department of Justice under the Federal Tort Claims Act, and the Justice Department has not responded to his claim.

     With the complaint, Mr. Podlucky filed a motion for leave to proceed *in forma pauperis*. Mr. Podlucky has demonstrated that he satisfies the requirements to proceed in this manner, and the motion for leave to proceed *in forma pauperis* is granted.

     The defendant has moved to dismiss the complaint for lack of jurisdiction and failure to state a claim on which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Because the complaint presents claims that fall outside the limited jurisdiction of the Court of Federal Claims, the defendant's motion to dismiss is granted.

**I.    BACKGROUND[1]**

     Mr. Podlucky was majority shareholder and chief executive officer of LeNature's Inc. *See United States v. Podlucky*, No. CR 11-37, 2019 WL 1359486 (W.D. Pa. Mar. 26, 2019)

---

[1] For purposes of the defendant's motion to dismiss, the Court takes the allegations in the complaint as true. The Court takes judicial notice of the decisions of other federal courts in

(denying his co-defendant wife's petition for post-conviction relief), *certificate of appealability denied*, No. CV 19-2218, 2019 WL 6506186 (3d Cir. Oct. 24, 2019).  In connection with a large-scale money-laundering scheme involving LeNature's, both Mr. Podlucky and members of his family were charged with multiple federal financial offenses.

The scheme masterminded by the plaintiff took shape in 1998.[2]  The plaintiff defrauded investors and lenders by "falsely inflating LeNature's sales and revenue figures to obtain capital" fraudulently.  *Id*. at *1.  The plaintiff and his family used the funds thus obtained by fraud to support an extravagant lifestyle and to make non-business-related purchases, including approximately $33 million in jewelry.  *Id*.

The fraud was initially detected in 2006, when LeNature's was forced by its creditors into bankruptcy.  *Id*.; *see also In re Le Nature's Inc.*, No. 06-25454-TPA (Bankr. W.D. Pa.).  Even after the fraud was uncovered, the plaintiff and his family continued to "attempt to liquidate and conceal certain assets obtained pursuant to the fraudulent scheme, particularly the jewelry." *Podlucky*, 2019 WL 1359486, at *1.  The plaintiffs did so "through a complicated series of sales, transfers, and gifts, filtered through various legal entities created by the Podluckys."  *Id*.

In 2011, after being indicted, Mr. Podlucky pleaded guilty in the Western District of Pennsylvania to income-tax evasion, mail fraud, and conspiracy to launder money.  As part of his plea agreement, Mr. Podlucky agreed to forfeit "all pieces of gems and jewelry that were seized as evidence during the investigation and are currently in the possession of the United States (hereafter the Subject Jewelry), with the exception of certain personal pieces to be agreed upon by the parties."  *See United States v. Podlucky*, No. CR 09-278, 2017 WL 3394142, at *1 (W.D. Pa. Jan. 13, 2017).  Mr. Podlucky acknowledged in the plea agreement that the jewelry was "criminally forfeitable to the Government as a substitute asset and voluntarily consented to the Court entering an order of forfeiture against the Subject Jewelry in favor of the United States." *Id*.  Mr. Podlucky was sentenced to 20 years of imprisonment on the fraud and conspiracy counts and five years on the tax evasion count, to run concurrently and to terms of supervised release and ordered to pay restitution of $661,324,329.81.  *Id.*

Mr. Podlucky challenged the forfeiture provision of his plea agreement in a 2013 petition for post-conviction review.  In rejecting the petition regarding the forfeiture provision, the district court found the provision to be an unenforceable "agreement to agree."  *United States v.*

---

connection with the criminal cases against the plaintiffs and the pending forfeiture action, as they have been incorporated by reference in the complaint.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bell/Heery v. United States*, 106 Fed. Cl. 300, 307 (2012), *aff'd*, 739 F.3d 1324 (Fed. Cir. 2014).

[2] Mr. Podlucky spends the first 96 pages of his 112-page opposition to the defendant's motion to dismiss largely attacking the accuracy of these background facts and explaining his own version of the events underlying his claim.  While the Court must take the allegations of the complaint as true, the plaintiff's version of the facts outlined in his brief does not receive the same benefit.  Instead, the Court relies on the findings and conclusions of the courts involved in the underlying bankruptcy and criminal proceedings.

*Podlucky*, No. CR 09-278, 2014 WL 7369841, at *3-4 (W.D. Pa. Dec. 29, 2014), *certificate of appealability denied*, No. 15-1240 (3d Cir. 2015).

In late 2016, Mr. Podlucky attempted to withdraw his guilty plea. The district court rejected his effort. *Podlucky*, 2017 WL 3394142. The Third Circuit affirmed the denial of Mr. Podlucky's motion to withdraw his guilty plea. *United States v. Podlucky*, 697 F. App'x 744, 746 (3d Cir. 2017).

In January 2017, Mr. Podlucky filed a "Motion to Release Lien" in the district court, which denied the motion. The Third Circuit summarily affirmed the denial of the motion. *United States v. Podlucky*, 690 F. App'x 787 (3d Cir. 2017).

Even after the rejection of all his collateral attacks on his conviction and sentence, Mr. Podlucky continued to file various motions seeking relief from his conviction in the district court, which rejected them in its motion recent opinion. *United States v. Podlucky*, No. CR 09-278, 2021 WL 1124907 (W.D. Pa. March 24, 2021), *appeal docketed*, No. 21-2015 (3d Cir.).

In 2012, the United States filed *in rem* a verified complaint for criminal forfeiture arising from its prosecution of Mr. Podlucky and his wife. *United States v. Various Items of Jewelry*, No. 2:12-cv-01171-ANB (W.D. Pa. Aug. 15, 2012). Attached to the government's forfeiture complaint in that case was a 66-page listing of the various items of jewelry allegedly subject to forfeiture. The government's forfeiture action was stayed pending the conclusion of criminal proceedings against Mr. and Mrs. Podlucky, and the stay remained in place while the collateral post-conviction proceedings outlined above took place. In April 2021, the district court lifted the stay, and the government's forfeiture case is proceeding and remains pending.

In March 2021, Mr. Podlucky filed suit against the Department of Justice in the District of Colorado alleging that it had breached the plea agreement by failing to return jewelry with an alleged cost basis of more than $4.8 million. *Podlucky v. Dep't of Justice*, No. 1:21-cv-00646-GPG (D. Colo. March 29, 2021). The district court found that it lacked subject-matter jurisdiction and dismissed the complaint without prejudice.

Finding no success in the district courts and the Third Circuit, Mr. Podlucky has recently turned to the Court of Federal Claims to seek relief.

Earlier this year, Mr. Podlucky filed a complaint in this court raising a claim for a taking related to the criminal forfeiture of jewelry allegedly acquired with funds secured through fraud. Judge Campbell-Smith *sua sponte* dismissed the case without prejudice. She held that the claim was untimely and barred by the six-year statute of limitations on actions filed in this court under 28 U.S.C. § 2501. *Podlucky v. United States*, No. 21-1377, 2021 WL 2627130 (Fed. Cl. June 25, 2021), *reconsideration denied*, No. 21-1377C, 2021 WL 3124073 (Fed. Cl. July 23, 2021), *appeal filed*, No. 21-2226 (Fed. Cir. Aug. 11, 2021). Citing the government's pending forfeiture action against the jewelry, Judge Campbell-Smith declined to transfer the case in the interest of justice because to do so would produce duplicative litigation over the same claim. *Id.* at *3.

Shortly after filing this action, Mr. Podlucky filed two other complaints in this court. In the first, he purported to sue on behalf of the Grace Community Church of the Valley alleging a

taking under the fifth amendment. *See Grace Comty. Church of the Valley v. United States*, No. 21-1665 (Fed. Cl. Aug. 3, 2021). That case was recently dismissed by Chief Judge Kaplan because Mr. Podlucky could not represent a corporation or entity himself as a non-lawyer under RCFC 83.1(a)(3). *Id.*, 2021 WL 5045715 (Fed. Cl. Oct. 29, 2021). In the second case, Mr. Podlucky sued for himself and his wife. *See Podlucky v. United States*, No. 21-1686 (Fed. Cl. Aug. 11, 2021). In that complaint, the plaintiffs alleged that the government had unlawfully forfeited half the jewelry it had seized from them and sought damages of more than $11 million. That claim too was assigned to the undersigned and is being dismissed for lack of jurisdiction through an opinion and order being filed concurrently with this one.

This action, filed after Judge Campbell-Smith had dismissed Mr. Podlucky's earlier case, is based on a document filed by Mr. Podlucky in his closed criminal case, No. CR 09-278 (W.D. Pa.), and attached to the complaint. The document is entitled "Jurat Affidavit" and is largely unintelligible. It purports to be for the purpose of "Entering a Default Judgment by the Clerk." Mr. Podlucky filed that document on July 16, 2019. The Jurat Affidavit asserts that Mr. Podlucky had complied with the requirements of Rule 55 of the Federal Rules of Civil Procedure, and, because the United States had failed to respond to a variety of motions and filings in his criminal case, a default judgment in the amount of $22,517,500,000 was warranted. Mr. Podlucky also requested other relief in addition to the award of damages. Attached to this Jurat Affidavit was an "Affidavit for Injury," in which Mr. Podlucky describes a series of purported financial transactions that gave rise to obligations allegedly owed to Missy's Place Foundation and Grace Community Church of the Valley. The amount demanded appears to reflect the enterprise value of LeNature's and the value of items and goods acquired by the plaintiff and his family through the fraud that was LeNature's.

In his complaint, Mr. Podlucky further alleges that, after filing his Jurat Affidavit and its attachments, he filed an administrative claim with the Department of Justice under the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2765, seeking $22,517,500,000. The plaintiff never received a determination on that frivolous claim.

On March 16, 2021, the plaintiff purported to withdraw all motions then pending in his closed criminal case, with a few exceptions. On March 19, 2021, the district judge deemed those motions withdrawn.

The plaintiff alleges that, by not deeming the Jurat Affidavit withdrawn, the district judge "upheld the Default Judgment . . . ." (Compl. at 3.) Based on this supposed default judgment, the plaintiff seeks damages in this action of $22,517,500,000, the amount he demanded from the Department of Justice in his tort claim and asserted was due him in the Jurat Affidavit.

The defendant has moved to dismiss the complaint, and the plaintiff opposes that motion. The Court has determined that oral argument is not necessary to resolve the defendant's motion.

## II. STANDARD OF REVIEW AND JURISDICTION

### A. Standard of Review

The government has moved to dismiss both for lack of subject-matter jurisdiction under RCFC 12(b)(1) and for failure to state a claim under RCFC 12(b)(6).

Under RCFC 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the government does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). The court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts, *id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)), and may review evidence outside the pleadings. *Id.*

The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc.*, 659 F.3d at 1163. If the court finds that it lacks subject-matter jurisdiction over the plaintiff's claim, RCFC 12(h)(3) requires dismissal of the claim.

Under RCFC 12(b)(6), dismissal "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party, *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal under RCFC 12(b)(6), a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### B. *Pro se* plaintiff

The plaintiff is proceeding *pro se*. As a result, his pleadings are entitled to a more liberal construction than the Court would give to pleadings prepared by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Giving *pro se* litigants' pleadings a liberal interpretation and construction does not, however, divest *pro se* plaintiffs of the responsibility of demonstrating that the jurisdictional requirements that limit the types of claims the Court of Federal Claims may entertain have been satisfied. *See Spengler v. United States,* 688 F. App'x 917, 920 (Fed. Cir. 2017); *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). In construing *pro se* litigants' pleadings liberally, the court does not become an advocate for the

5

litigants. Rather, the court ensures that the *pro se* litigants' pleadings are construed in a manner that gives the litigants every opportunity to make out a claim for relief.

### C. Jurisdiction

The jurisdiction of the Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Supreme Court has interpreted the Tucker Act to waive sovereign immunity to allow jurisdiction in the Court of Federal Claims if a claim is (1) founded on an express or implied contract with the United States; (2) seeking a refund of a payment previously made to the United States; or (3) based on federal constitutional, statutory, or regulatory law mandating compensation for damages sustained, unless arising from a tort. *See United States v. Navajo Nation*, 556 U.S. 287, 289-90 (2009). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *see also United States v. Sherwood*, 312 U.S. at 588.

Although the Tucker Act confers jurisdiction on the Court of Federal Claims, "it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). To invoke the limited jurisdiction of the Court of Federal Claims, a plaintiff must also point to a statute or regulation that confers a substantive right to money damages. *Id.* Such a statute or regulation must be money-mandating, meaning the source of alleged liability "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* at 400 (1976) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)).

### III. DISCUSSION

In its motion to dismiss, the defendant interposes four defenses: (1) there is no default judgment to enforce; (2) the claim does not rely on a money-mandating statute or regulation, as required to fall within the limited jurisdiction of the Court of Federal Claims; (3) the claim is barred by the statute of limitations; and (4) with respect to some portion of the alleged damages,

the non-lawyer plaintiff is improperly seeking to vindicate the interests of corporate entities, namely Missy's Place Foundation and Grace Community Church of the Valley.

### A. No Default Judgment

The plaintiff's central problem is that there is no default judgment that a judge has entered. The plaintiff himself filed the Jurat Affidavit, and no judge ever entered a judgment based on the document. A judgment is a formal legal document entered by a judge. *See* Rule 54(a), Federal Rules of Civil Procedure ("FRCP"). A default judgment also must be entered either by the clerk or by a judge. *See* FRCP 55(b).

The plaintiff faces another hurdle here. A default judgment in a district court is available against the United States "only if the claimant establishes a claim or right to relief by evidence that satisfies the court." FRCP 55(d). The plaintiff has put forward no support that a court ever made that determination.

The filing by a defendant in a closed criminal case of a document styled a Jurat Affidavit as a basis for a default judgment does not by itself constitute a default judgment against the United States.

With no actual judgment entered by the district court and no finding that the plaintiff is entitled to relief on his claim, there is no basis on which the plaintiff can seek to invoke the jurisdiction of this Court.

### B. No Money-Mandating Source of Law

Even if the district judge had entered a default judgment, however, the enforcement of such a judgment is left to that court; it would be beyond the jurisdiction of the Court of Federal Claims to enforce a judgment of another federal court. *Peters v. United States*, 149 Fed. Cl. 781, 790 (2020) ("Because [the plaintiff] is asking this court to enforce a decision of a Federal District Court and the United States Court of Federal Claims does not have jurisdiction to review a Federal District Court decision, [the plaintiff's] claim must fail in this court."), *appeal filed*, No. 21-1080 (Fed. Cir.); *see also Straw v. United States*, 4 F.4th 1358, 1361 (Fed. Cir. 2021); *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015); *Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001), *cert. denied*, 534 U.S. 1042 (2001); *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994).

Had the district court entered an actual default judgment, the district court would have the authority to enforce compliance with its judgment. This court does not have such authority. The Court of Federal Claims may exercise jurisdiction only when a claimant can point to a money-mandating law as the source of substantive law on which the liability of the federal government can be based. *Testan*, 424 U.S. at 398. Mr. Podlucky has identified no such source of law.

The plaintiff appears to be trying to use the asserted default judgment and this action, predicated on that asserted but non-existent default judgment, to attack collaterally the

determinations resolved in the bankruptcy proceedings involving LeNature's, the criminal sentence the plaintiff received, and possibly the unresolved forfeiture proceedings pending in the district court. The Court of Federal Claims may not serve as a forum for collateral attacks on the decisions of federal district and bankruptcy courts. *Straw*, 4 F.4th at 1361; *Allustiarte*, 256 F.3d at 1352; *Joshua*, 17 F.3d at 380.

Alternatively, in his action in the District of Colorado, Mr. Podlucky alleged a breach of contract. Actions against the United States for a breach of contract are usually within the Tucker Act jurisdiction of the Court of Federal Claims. Here, however, the alleged contract Mr. Podlucky has with the United States is his plea agreement. In the absence of language in the plea agreement expressly providing for an award of damages, the Tucker Act does not confer jurisdiction on the Court of Federal Claims to enforce the terms of his plea agreement. *Sanders v. United States*, 252 F.3d 1329, 1335-36 (Fed. Cir. 2001). Any action to enforce the terms of a Mr. Podlucky's plea agreement must be brought in the Western District of Pennsylvania. *Id*. at 1336 (citing *Santobello v. New York*, 404 U.S. 257 (1971)).

The plaintiff also appears to have predicated his claim for a default judgment at least in part on an alleged tort. There would be no other reason for him to have filed an administrative claim pursuant to the Federal Tort Claims Act with the Department of Justice seeking damages. Claims against the United States for damages arising from a tort are outside the jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1) (providing that the jurisdiction of the Court of Federal Claims does not extend to cases "sounding in tort").

Because the plaintiff has failed to allege that the defendant's liability can be traced to a law that "can fairly be interpreted as mandating compensation . . . for the damage sustained" and otherwise seeks to have this court review decisions of other federal courts, the Court lacks jurisdiction over the complaint. *See Testan*, 424 U.S. at 400 (internal quotation and citation omitted).

### C. Statute of Limitations

Every claim brought in this court under the Tucker Act is subject to the six-year statute of limitations of 28 U.S.C. § 2501. Under this statute, every claim must be brought within six years after it first accrues. *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1177 (2004). A claim under the Tucker Act "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit . . . ." *Id*. at 1303. This six-year statute of limitations is jurisdictional, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), and not subject to equitable tolling. *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008).

The statute of limitations for Mr. Podlucky's claim did not start to run when he filed his Jurat Affidavit in July 2019. The Federal Circuit has held that a claim accrues when "all events have occurred that are necessary to enable the plaintiff to bring suit . . . ." *Martinez*, 333 F.3d at 1303. The facts underlying this suit and the plaintiff's Jurat Affidavit occurred during the bankruptcy, investigation, and prosecution of Mr. Podlucky and his family members. Aside

from Mr. Podlucky filing the Jurat Affidavit in 2019, nothing relevant to this claim occurred on any date later than 2011.

Because the dates the plaintiff identifies in his complaint for when the claim accrued are all more than six years before the filing of the complaint here, Mr. Podlucky's claim is barred by 28 U.S.C. § 2501, and the Court lacks jurisdiction over the case.

### D. Suit on Behalf of Others

In the Jurat Affidavit that forms the basis for the default judgment Mr. Podlucky seeks to enforce through his complaint, Mr. Podlucky asserts that the losses of LeNature's, Missy's Place Foundation, and Grace Community Church of the Valley are encompassed within his claim. (Compl., Ex. at 16.[3]) The amount attributable to each entity, as opposed to the amount allegedly due to Mr. Podlucky personally, is not specified.

Under RCFC 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest." This claim is filed by Mr. Podlucky only in his own name and on his own behalf. He may not pursue claims on behalf of other entities in this action, even if the Court had jurisdiction over any aspect of the claims, which it does not. Furthermore, if the Court did have jurisdiction over any portion of the claims, Mr. Podlucky could not amend his complaint to add these entities as plaintiffs. Mr. Podlucky has already learned from Chief Judge Kaplan's dismissal of his complaint filed on behalf of Grace Community Church of the Valley that an individual appearing *pro se* may not represent the interests of a corporate or other entity. *See Grace Cmty. Church of the Valley*, 2021 WL 5045715.

### IV. TRANSFER

Transfer in this case is not warranted. Under 28 U.S.C. § 1631, a court lacking jurisdiction over an action "shall, if it is in the interest of justice, transfer such action" to any court in which the case could originally have been brought. This action was already before another court; in fact, the plaintiff seeks to enforce a (albeit non-existent) default judgment of another court before which the underlying matter was previously pending.

Moreover, the plaintiff is currently contesting the related civil forfeiture in the Western District of Pennsylvania. Because his claim is better raised in that existing action, the intertest of justice does not require a transfer to that, or any other, federal court to allow the plaintiff to litigate his claim. Therefore, just as Judge Campbell-Smith did with Mr. Podlucky's prior case, *Podlucky*, 2021 WL 2627130, at *3, the Court declines to transfer this case to the Western District of Pennsylvania.

---

[3] The cited page numbers of the plaintiff's exhibits refer to the digital pagination automatically generated by the court's electronic docket filing system.

## V.     CONCLUSION

The plaintiff's motion for leave to proceed *in forma pauperis* is **GRANTED**.

The plaintiff's claim falls outside the limited jurisdiction of the Court of Federal Claims and is untimely under 28 U.S.C. § 2501.  Accordingly, the Court lacks jurisdiction over the claim.  The defendant's motion to dismiss the complaint pursuant to RCFC 12(b)(1) is **GRANTED**, and the complaint **DISMISSED** under RCFC 12(h)(3).

The Clerk is **DIRECTED** to enter final judgment dismissing the complaint.  No costs are awarded.

It is so **ORDERED**.

s/ Richard A. Hertling<br>
**Richard A. Hertling**<br>
**Judge**